Emanuel VILLANUEVA, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 07SC954.

Supreme Court of Colorado,
En Banc.

Dec. 15, 2008.

As Modified on Denial of Rehearing
Feb. 2, 2009.*

* Justice Coats would grant the Petition.

Douglas K. Wilson, Colorado State Public Defender, Pamela A. Dayton, Deputy State Public Defender, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Jonathan P. Fero, Assistant Attorney General, Appellate Division Denver, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

We granted certiorari to review the court of appeals' decision affirming the trial court's sentence of Emanuel Villanueva to a term of confinement in the aggravated range based on Villanueva's admission to violating a condition of probation during a probation revocation hearing. *People v. Villanueva*, —— P.3d ——, No. 05CA2542, 2007 WL 2728629 (Colo.App. Sept. 20, 2007).

In 2002, Villanueva pled guilty to attempted sexual assault on a child and was sentenced to a term of two years probation. He subsequently contacted the victim, violating a condition of his probation. At the revocation hearing, Villanueva confessed the contact and admitted it violated a term of his probation. The trial court determined the admission was an extraordinary aggravating circumstance under section 18–1.3–401(6), C.R.S. (2008), permitting a sentence over the presumptive range. The court therefore sentenced Villanueva to an aggravated range term of five years in the Department of Corrections ("DOC").

In order for a defendant's admission to be used to impose a sentence over the presumptive range, he must waive his Sixth and Fourteenth Amendment rights to have the facts used to aggravate his sentence be proved to a jury beyond a reasonable doubt. Because Villanueva was not advised of, and did not waive, his right to have aggravating facts proved beyond a reasonable doubt to a jury, he could not be sentenced beyond the presumptive range. Thus, we reverse the court of appeals and remand for resentencing consistent with this opinion.

## II. Facts and Procedural History

On October 19, 2001 Emanuel Villanueva was charged with sexual assault on a child— pattern of abuse[1] and sexual assault on a child.[2] The charges arose when Villanueva's mother reported to police that he was engaged in a sexual relationship with a minor. Villanueva was twenty-two years old and the victim, his girlfriend, was thirteen. As a result of these charges, Villanueva pled guilty to an added third count of attempted sexual assault on a child[3] in exchange for the dismissal of the original counts.

At the providency hearing, the trial court advised Villanueva that he could be sentenced to the DOC for the presumptive period of one to three years or for an extraordinary mitigated or aggravated period of six months to six years. The court also informed Villanueva that by pleading guilty he was "giving up various rights," including the right to have a jury determine "all issues of guilt beyond a reasonable doubt." The court further advised him that by waiving his right to a jury trial he would be "subjecting [himself] to a potential penalty within the ranges" outlined by the court. Villanueva stated he understood his rights. The prosecution recommended probation, and the court imposed a sentence of two years of probation with the condition that Villanueva complete offense specific therapy. To enroll in the required therapy, Villanueva was required to agree to certain conditions, including no contact with the victim.

---

1. § 18–3–405(1), (2)(d), C.R.S. (2008).

2. § 18–3–405(1), C.R.S. (2008).

3. §§ 18–2–101, 18–3–405, C.R.S. (2008).

The trial court twice extended Villanueva's probationary term to allow him to complete offense specific therapy. Shortly after the second extension, Villanueva's probation officer filed a complaint alleging Villanueva violated a condition of his probation by contacting the victim and threatening to kill her. The probation officer recommended a sentence to the DOC arguing Villanueva was "no longer an appropriate candidate for community supervision" due to his failure to utilize skills learned in therapy and the "risks that he presents to the victim."

At Villanueva's September 2005 probation revocation hearing, the court advised him pursuant to section 16–11–206(1), C.R.S. (2008), of his right to have the violation proved by a preponderance of the evidence to the court. Villanueva then admitted he violated the condition of his probation prohibiting contact with the victim.

At resentencing the following month, the prosecution requested a sentence in the aggravated range under section 18–1.3–103(6), C.R.S. (2008), arguing Villanueva's admission was a factor the court could properly consider to impose a sentence over the presumptive range. The court agreed, and found the admission constituted a proper "aggravated fact" justifying a sentence beyond the presumptive range. Based on that fact, Villanueva was sentenced to serve an aggravated range term of five years in the DOC plus two years of mandatory parole.

Villanueva appealed, arguing the trial court erred in using the probation violation admission as an aggravating factor. He argued this was improper because he did not knowingly, voluntarily, and intelligently waive his Sixth and Fourteenth Amendment rights to have a jury determine the facts used to support his aggravated sentence. The court of appeals rejected this argument and concluded Villanueva's admission "to the relevant facts rendered them *Blakely*-compliant [and] the [trial] court could properly use them to increase his sentence even if he did not first effectuate a waiver of his *Blakely*

rights." *People v. Villanueva*, —— P.3d ——, ——, No. 05CA2542, slip op. at 5, 2007 WL 2728629 (Colo.App. Sept. 20, 2007) (referring to *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)). The court of appeals additionally concluded *Blakely* did not require the district court to advise Villanueva of the right to have a jury decide whether he contacted and threatened the victim in violation of his probation because he "had no such right" at a probation revocation proceeding under the probation revocation statute. *Id.;* § 16–11–206(1). We granted certiorari to review that decision.[4]

### III. Standard of Review

■ A trial court has broad discretion over sentencing decisions. *People v. Watkins*, 684 P.2d 234, 239 (Colo.1984). However, constitutional challenges to sentencing determinations are reviewed de novo. *Lopez v. People*, 113 P.3d 713, 720 (Colo.2005); *People v. Matheny*, 46 P.3d 453, 462 (Colo.2002). When a defendant has preserved a challenge based on *Blakely v. Washington* at sentencing, we first determine whether a *Blakely* error occurred. *People v. Banark*, 155 P.3d 609, 611 (Colo.App.2007). Because such an error is of constitutional dimension, the sentence must be vacated unless the error was harmless beyond a reasonable doubt. *Id.*

■ The People argue Villanueva did not preserve a *Blakely*-based challenge because he did not expressly object to the aggravated sentence or the trial court's use of his admission as an aggravating fact. Prior to announcing the aggravated sentence, the trial court and counsel engaged in a discussion of this court's holding in *Lopez v. People*. In *Lopez* we discussed the circumstances that, under *Blakely*, a trial court could consider when aggravating a sentence. 113 P.3d at 720–25.

In arguing for an aggravated sentence, the prosecution stated "under [*Lopez* ], your honor, prior criminality is only one of the four areas on which the Court can look to on

4. The issue on which we granted certiorari is "[w]hether the court of appeals properly affirmed the trial court's decision to aggravate the defendant's sentence based on the advisement given to him at his providencey hearing and his admission during his probation revocation hearing."

which to base an aggravated sentence. One of the other areas [is] facts that are admitted by the defendant.... [*Lopez*] talks about the fact that post-plea facts can be used to aggravate." The trial judge responded "the Court is familiar with *[Lopez]*. The Court believes given the supreme court finding in that case that the defendant's admission of fact that he threatened to kill the victim ... constitutes an aggravated fact." The judge then announced the five year aggravated sentence. Following the announcement, defense counsel declared for the record "[a]n admission was no admission to any aggravating facts. It was only an admission to the petition filed for revocation of probation." The judge said "alright," and the hearing concluded.

The People argue Villanueva's statement regarding the admission was ambiguous and not sufficient to preserve a *Blakely* challenge. It is true that, viewed in isolation, defense counsel's statement is vague. However, in the context of the court's discussion of *Lopez,* which addressed when admissions are *Blakely*-compliant, it is sufficiently clear the defense took the position that the admission was not *Blakely*-compliant. Moreover, it is beyond dispute that the issue of whether Villanueva's statement was *Blakely*-compliant and could be used as an aggravating factor was squarely before the court. In the *Lopez* discussion, the court stated it considered the admission to be a fact it could properly consider for purposes of aggravation. Thus, the court was not only aware of the restrictions *Blakely* and *Lopez* imposed on a trial court's use of certain facts for purposes of aggravation, but the court actually considered these restrictions and nonetheless found the admission to be proper. Accordingly, the issue was properly preserved and we review the matter de novo.

## IV.  Analysis

■■  Courts cannot use a defendant's admissions to sentence him to an aggravated range term under section 18–1.3–401(6) unless he knowingly, voluntarily, and intelligently waives his right to have a jury determine beyond a reasonable doubt all facts that support the aggravated sentence. *People v.*

*Isaacks,* 133 P.3d 1190, 1195 (Colo.2006). If the defendant does not execute a waiver, the sentencing court cannot use an admission to support an aggravated sentence. Absent at least one proper basis for the aggravation, the court cannot sentence the defendant beyond the presumptive range.

The principles that guide us today were established by the United States Supreme Court in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. In *Apprendi,* the Court held the Sixth and Fourteenth Amendments to the United States Constitution require facts used to increase a penalty beyond the statutory maximum—except the fact of a prior conviction—be determined by a jury beyond a reasonable doubt. *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. There, Apprendi pled guilty to a charge of unlawful possession of a firearm. *Id.* at 468–69, 120 S.Ct. 2348. Under a New Jersey hate crime statute, the trial judge was permitted to aggravate the sentence if she found by a preponderance of the evidence that the underlying crime was motivated by racial bias. *Id.* Based on this statute, the trial judge aggravated Apprendi's sentence beyond the statutory maximum. *Id.* at 471, 120 S.Ct. 2348.

Apprendi appealed, and the Supreme Court held the sentence violated his jury trial and due process rights. The Court reasoned, just as a criminal defendant is entitled to a "jury determination that he is guilty of every element of the crime with which he is charged beyond a reasonable doubt," he is also entitled to have a jury determine every fact used to aggravate a sentence beyond the statutory maximum. *Id.* at 477, 490, 120 S.Ct. 2348.

Two years later, in *Blakely,* the Supreme Court specifically held the jury determination requirement includes admissions made by the defendant. 542 U.S. at 302–10, 124 S.Ct. 2531. The Court stated in order for a trial court to properly use a fact to aggravate a sentence, it must fit into one of four categories: 1) those supported by a jury verdict; 2) those established by a prior conviction; 3) those admitted by a defendant; and 4) those found by a court after a defendant stipulates

to judicial fact finding. *Id.* This court refers to facts established by a prior conviction as *Blakely*-exempt, and facts supported by a jury verdict, admitted by a defendant, or found by a court after a defendant stipulates to judicial fact finding as *Blakely*-compliant. *Lopez,* 113 P.3d at 726.

In *Blakely,* the defendant pled guilty to a charge of kidnapping. 524 U.S. at 298, 118 S.Ct. 1989. Standing alone, the facts admitted in the plea supported a maximum jail sentence of 53 months. *Id.* However, the trial judge imposed a 90 month sentence after finding the defendant acted with "deliberate cruelty," a statutorily enumerated ground for departing from the standard sentence range. *Id.* at 300–01, 118 S.Ct. 1989. On appeal, the Supreme Court overturned the 90 month sentence holding the maximum imposable sentence must be based solely on facts reflected in the jury's verdict or facts admitted by the defendant. *Id.* at 303, 118 S.Ct. 1989. Therefore, the Court reasoned, when a defendant pleads guilty, "the State is free to seek judicial sentence enhancements so long as the defendant" either admits the relevant facts or consents to judicial fact finding. *Id.* at 310, 118 S.Ct. 1989.

Following the *Apprendi* and *Blakely* decisions, this court addressed judicially determined sentence enhancements in *Lopez v. People,* 113 P.3d 713, and *People v. Isaacks,* 133 P.3d 1190. In *Lopez,* we held a judge must impose a sentence within the presumptive range unless she engages in "the extraordinary aggravating or mitigating circumstances analysis." 113 P.3d at 726. When engaging in that analysis, a judge may only aggravate a sentence if the aggravating facts are based on *Blakely*-exempt or *Blakely*-compliant factors. *Id.*

The next year, in *Isaacks,* we specifically addressed when a judge may enhance a sentence beyond the presumptive range based on a defendant's admission. 133 P.3d at 1192–94. We held a judge may not use a defendant's admission to aggravate his sentence unless the admission is given after a knowing, voluntary, and intelligent waiver of the right to a jury determination of the aggravating facts. *Id.* at 1194–95. Absent such a waiver, the judge may not use the admis-

sion against the defendant and cannot sentence the defendant to an aggravated term. *Id.*

In *Isaacks,* the defendant pled guilty to one count of conspiracy to commit felony menacing. *Id.* at 1191. Isaacks signed the Petition to Enter a Plea of Guilty which stated the signatory understood the judge could sentence him to an aggravated term beyond the presumptive range and agreed to waive "all rights to trial by jury." *Id.* However, Isaacks was not advised of, and did not waive, his right to a jury trial on facts used to form the basis of an aggravated sentence. Therefore, while Isaacks waived his right to a jury trial on the issue of guilt by agreeing to plead guilty, he never waived the right to a jury determination of aggravating facts.

At the sentencing hearing, the trial judge relied on a presentence report to determine aggravating facts. *Id.* When asked, Isaacks did not make corrections or additions to the presentence report. *Id.* Based on the information contained in the report, the judge aggravated Isaacks's sentence and he was sentenced to twice the presumptive maximum range. *Id.* at 1192.

On appeal, we held Isaacks's failure to object to the facts contained in the presentence report did not constitute a waiver of his right to a jury determination of aggravating facts because it was not given pursuant to an advisement of these rights. Therefore, the statements in the presentence report could not be considered a *Blakely*-compliant admission. *Id.* We acknowledged that under *Apprendi* and *Blakely,* a trial court can use a defendant's factual admissions to aggravate his sentence. *Id.* at 1195. However, we determined that, "like the right to a jury trial generally, the right to have a jury determine the facts that form the basis for aggravated sentencing under section 18–1.3–401(6) is a fundamental right that *can only be waived knowingly, voluntarily, and intelligently.*" *Id.* (emphasis added).

We therefore held longstanding principles of Sixth and Fourteenth Amendment jurisprudence "compel[ ] the conclusion that *Blakely* does not permit a sentencing court to use a defendant's factual admissions to

increase his sentence unless the defendant first effectuates a knowing, voluntary, and intelligent waiver of his *Blakely* rights." *Id.* Because the judge used the admissions contained in the presentence report to sentence Isaacks to an aggravated period of confinement, and Isaacks did not waive his right to a jury trial on all facts forming the basis of his aggravated sentence, we remanded the case to the trial court for resentencing within the presumptive range. *Id.* at 1196.

In sum, the maximum imposable sentence is not the "sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Blakely*, 542 U.S. at 303–4, 124 S.Ct. 2531. The existence of a Blakely-compliant or -exempt fact opens the aggravated range and permits the sentencing court to consider other aggravating circumstances concerning the defendant or his crime. *Lopez*, 148 P.3d at 124. Admissions can only form the basis of an aggravated sentence, and thus be *Blakely*-compliant, if they are made after a defendant is properly advised of, and waives, the right to a jury determination of the aggravating facts. *Isaacks*, 133 P.3d at 1194–95. If no waiver is given, absent a different *Blakely*-compliant or -exempt fact, the defendant cannot be sentenced to an aggravated term.

The People argue, in light of the Colorado statute governing probation revocation hearings,[5] Villanueva was not entitled to an advisement informing him of his right to have a jury determine the aggravating facts because probation revocation proceedings are determined by judges, not by juries. Section 16–11–206(3) provides that a probationer is entitled to a hearing before the court, at which the prosecution bears the burden of establishing by a preponderance of the evidence that the violation occurred. Moreover, the statute specifically states a probationer has no right to a jury trial at a revocation hearing. § 16–11–206(1).

The People contend when Villanueva admitted to contacting the victim and threatening to kill her, he knowingly, voluntarily, and intelligently waived all available rights. They argue the trial court's advisement re-

garding Villanueva's right to a hearing at which it would find facts by a preponderance of the evidence, is a proper statement of the law, and as such, he had no right to a jury determination of the aggravating facts as was required in *Isaacks*.

It is true that under the probation revocation statute a jury is not available at a probation revocation hearing. § 16–11–206(1). However, the Colorado probation revocation statute cannot abrogate a defendant's constitutional right to have a jury determine all facts used to aggravate his sentence beyond the presumptive range. While the trial court's advisement to Villanueva in the present case may have been a proper statement of the statutory probation revocation scheme, it was not a proper advisement of rights under *Blakely* and *Isaacks*. Pursuant to *Isaacks*, a court may only use a defendant's admission to aggravate a sentence beyond the presumptive range if it is given after a proper waiver of the right to have a jury determine the facts supporting the aggravation. 133 P.3d at 1194–95. Therefore, a defendant's waiver of the right to a jury trial with respect to the aggravating facts is an essential prerequisite to a court's use of a defendant's admissions for purposes of sentence aggravation. If a court does not first obtain a defendant's waiver, that defendant's admission cannot form the basis of an aggravated sentence and, absent a different *Blakely*-compliant or -exempt factor, the defendant must be sentenced to a period of confinement within the presumptive range.

Accordingly, for the People's argument to succeed, we would have to conclude a defendant's right to a jury determination of facts used to aggravate his sentence does not extend to resentencing after a probation revocation. We find no principled basis for doing so.

The analytical foundation underlying the *Apprendi* and *Blakely* decisions is that, if a court uses a fact to aggravate a sentence beyond the presumptive range, regardless of whether the fact is termed a "sentencing factor" or an "element," a jury must determine it beyond a reasonable doubt. A

---

**5.** § 16–11–206, C.R.S. (2008).

statute defining an aggravating fact a "sentencing factor" cannot negate the Sixth Amendment requirement that the fact be determined by a jury beyond a reasonable doubt. Similarly, a statute providing a defendant has no right to have a jury determine a probation violation does not negate the Sixth Amendment right to have a jury determine the aggravating fact. Instead, a statute prohibiting a jury at a probation revocation proceeding has the effect of preventing compliance with *Blakely's* jury determination requirement. Therefore, a defendant must waive his constitutional right to have a jury determine the facts forming the basis of an aggravated sentence in order for a court to use his admission during a probation revocation proceeding to sentence him beyond the presumptive range.

In *Isaacks,* we addressed a situation very similar to that before us today. There, the court sentenced the defendant to a period of incarceration exceeding the statutory maximum range based on an admission. We set that sentence aside because the admission was not the product of a knowing, voluntary, and intelligent waiver of the right to have a jury determine all aggravating facts. Our decision in *Isaacks* was not limited to implied admissions, but applied to admissions generally.[6] We concluded that facts admitted by Isaacks could not be used to aggravate his sentence absent a waiver of his right to have a jury determine the facts forming the basis of the aggravated sentence. Our conclusion relied on the suggestion in *Blakely* that a constitutionally sufficient waiver is required before the trial court may utilize any fact other than those established by the elements of the offense to open the enhanced sentencing range.

The *Blakely* majority articulated this concept in response to Justice Breyer's concern that the rule enunciated by the Court deprives defendants who plead guilty of the opportunity to argue sentencing factors to the trial judge. 542 U.S. at 310, 124 S.Ct. 2531. The Court stated "when a defendant pleads guilty, the State is free to seek judi-

cial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial fact finding. If appropriate waivers are procured, States may continue to offer judicial fact finding as a matter of course to all defendants who plead guilty." *Id.* Accordingly, a defendant is free to waive his *Blakely* rights; however, in order to be effective, the waiver must occur after a proper advisement of these rights.

Here, the court sentenced Villanueva to a period of confinement beyond the statutory maximum based on facts he admitted. However, Villanueva did not waive his right to a jury determination with respect to the facts admitted. The only difference between the present case and the factual situation in *Isaacks* is that, here, the admission and aggravation occurred after probation revocation. It is true that probation revocation proceedings are different from proceedings conducted prior to the imposition of probation. *See Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)(stating "the full panoply of [constitutional] rights due a defendant" are not required in a probation revocation proceeding). However, the concerns expressed in *Blakely* and *Isaacks* nonetheless apply to probation revocation proceedings because, regardless of when the admission occurs, a right to jury trial attaches if the admission is used to exceed the statutory maximum sentence. Therefore, whether the admission occurs at an original sentencing, in a presentence report, or at a probation revocation hearing, in order for it to be used to open the door to the aggravated range, a defendant must first effectuate a valid waiver of the right to have the admission proved to a jury beyond a reasonable doubt.

■ Because a jury is not statutorily available at a probation revocation hearing, if a court has not previously obtained a waiver, a defendant cannot be sentenced to an aggravated period of confinement based on his admission. Therefore, on resentencing after

**6.** The issue for which we granted certiorari in *Isaacks* was "whether a defendant's failure to make corrections or additions to a presentence report when asked by the courts constitutes an

admission of information not related to the elements of the crime permits an aggravated sentence under *Blakely v. Washington* and *Lopez v. People.*"

probation revocation, just as in any other sentencing, a trial judge may only consider a defendant's admissions for purposes of sentence aggravation if she has obtained a valid waiver from the defendant. At a probation revocation and resentencing proceeding, if a waiver is not first secured by the court, the defendant's admission cannot be used to aggravate his sentence, and the defendant must be resentenced within the presumptive range.

Here, the trial court sentenced Villanueva to an aggravated range term based on facts he admitted at the probation revocation hearing. He was not advised of, and did not waive, his right to have a jury determine whether the probation violation occurred. Therefore, the admission cannot be used to aggravate the sentence beyond the presumptive range. Because the sentence was based solely on the admission, Villanueva should have been sentenced within the presumptive range.

Alternatively, the People argue Villanueva "implicitly" stipulated to judicial fact finding when he requested probation because, by that act, he accepted the trial court's continuing jurisdiction. This argument is contrary to the well-established tenet that a waiver is an *intentional* relinquishment of a *known* right or privilege. *See, e.g., Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Isaacks*, 133 P.3d at 1196; *People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984). Waiver of the fundamental right to a jury trial may not be presumed. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Therefore, in order for a defendant to validly waive his right to have a jury determine the facts supporting an aggravated sentence, the record must, at a minimum, reflect that the court advised the defendant of that right and the consequences of surrendering it, and that the defendant nevertheless chose to waive it.

Similarly, the court's advisement of Villanueva at the providencey hearing did not provide him with notice of his right to a jury determination of the facts used to aggravate his sentence. For an advisement at original sentencing to be sufficient, it must specifically inform the defendant he has a right to have any facts used to aggravate his sentence proven to a jury. The advisement in the present case did not inform Villanueva of the right to have facts used to exceed the statutory maximum sentence tried to a jury. The trial court advised Villanueva that he would be giving up "various rights" by deciding to plead guilty, including the right to have a jury determine all issues of *guilt* beyond a reasonable doubt. The court also informed him he could face a six-year term of incarceration if it found aggravating factors. In order for an advisement and concomitant waiver at an original sentencing to be proper, a court should inform the defendant of his right to have a jury determine aggravating facts beyond a reasonable doubt. The advisement must specifically inform the defendant of this right, not merely of the right to a jury trial on the issue of guilt. Because Villanueva was not sufficiently advised of, and did not waive, his right to have a jury determine all facts used to aggravate his sentence, his admission cannot be used to justify the aggravated sentence. Although Villanueva did not waive his constitutional rights, neither *Blakely* nor *Isaacks* prevent a defendant who admits facts at a probation revocation hearing from doing so.

Accordingly, while Villanueva was not statutorily entitled to a jury trial during his revocation hearing, absent a waiver, he was constitutionally entitled to a jury determination of the facts used to aggravate his sentence. *See Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. When the trial court aggravated Villanueva's sentence at the probation revocation, the court informed Villanueva he had a right to have the court determine the facts justifying an aggravated sentence by a preponderance of the evidence. This advisement, while a proper statement of the statutory law, did not provide adequate notice to Villanueva of his *Blakely* rights. Because Villanueva did not execute a knowing, voluntary, and intelligent waiver of these rights, the trial court should not have used his admission to aggravate the sentence, and should have sentenced him within the presumptive range.

## V. Resentencing on Remand

The People argue we should affirm Villanueva's aggravated sentence because he was convicted of attempted stalking after the resentencing at issue in this appeal. They contend that Villanueva has now been convicted of a crime resulting from the same conduct the trial court considered when it aggravated Villanueva's sentence, and this conviction constitutes a *Blakely*-compliant fact we may now consider. They further argue that if this court remands to the district court for resentencing, the new sentence would not be limited to the presumptive range because the trial court could consider the subsequent conviction. Villanueva disagrees, and states that because the attempted stalking charge was not filed until after the sentencing proceeding at issue here, we cannot now consider it. Relying on *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), Villanueva argues consideration of the conviction would "punish him for exercising his right to appeal."

After the resentencing at issue here, in a separate proceeding, Villanueva was charged with stalking resulting from contact he had with the victim in the present case. Villanueva pled guilty to attempted stalking, a class six felony, and in July 2007, he was sentenced to serve one year of confinement. The People state the conduct which led to the attempted stalking conviction was the same conduct as that which led to the admission to the probation violation.[7] The People attached a copy of the register of actions for the attempted stalking conviction to their answer brief. The register reflects that the conduct which gave rise to the charges occurred on August 26, 2003 and that an arrest warrant was issued on November 14, 2005—one month after the resentencing at issue in this appeal.

▇▇▇▇ Villanueva's argument that consideration of the subsequent conviction would punish him for exercising his right to appeal fails. In *Pearce*, the United States Supreme

Court held that a court may not resentence a defendant to an increased term simply because the defendant chose to exercise his right of appeal or for no reason at all. 395 U.S. at 726, 89 S.Ct. 2072. However, a court may resentence a defendant to a longer period of confinement based on proper considerations reflected in the record. *Id.* These considerations may include events which occurred after the first trial that "throw new light upon defendant's life, health, habits, conduct, and mental and moral propensities." *Id.* at 723, 89 S.Ct. 2072 (internal quotations omitted); *see also Texas v. McCullough*, 475 U.S. 134, 141, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986) (stating a court may increase a sentence on remand by affirmatively identifying conduct or events, such as a later conviction, that justify the increased sentence); *Wasman v. United States*, 468 U.S. 559, 570, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984) (holding a conviction obtained while a defendant's case was on appeal is appropriate to consider upon resentencing). Therefore, if a court considers events that occurred during the appeal process when imposing the new sentence, consideration of those facts does not necessarily mean the resentencing court is punishing the defendant for exercising his right to appeal. *Id.*

▇▇▇▇ Further, the trial court is not prevented from considering the subsequent conviction—resulting from conduct Villanueva engaged in while on probation—based on *Blakely*'s concern for protecting the jury trial rights. While a defendant is on probation, a court may consider his actions while on probation in determining the appropriate sentence after probation has been revoked. *Byrd v. People*, 58 P.3d 50, 55 (Colo. 2002). Convictions are a *Blakely*-exempt because they have been previously determined by a jury beyond a reasonable doubt or admitted by the defendant after a waiver of jury trial rights. *Lopez*, 113 P.3d at 730. Thus the defendant's Sixth Amendment rights have been adequately protected in the prior conviction proceeding. *Id.* (relying on *Jones v.*

7. In their answer brief, the People state "[t]he nature of this offense, its commission against the same victim, and the timing of the charge, all suggest the defendant's conviction is based on the same conduct that supported probation revocation—contacting [the victim] and threatening to kill her." Villanueva does not address the issue.

*United States*, 526 U.S. 227, 249, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)).

■ In contrast to convictions, other facts must be *Blakely*-compliant to be considered for purposes of aggravation. Other facts cannot become *Blakely*-compliant and be considered on resentencing because juries are not available at resentencing hearings. *See Lopez*, 148 P.3d at 124–25 (Colo. 2006). Because the attempted stalking conviction is *Blakely*-exempt, Isaacks's remedy of resentencing within the presumptive range for an error resulting from improper consideration of other facts is not compelled here.

Here, if the same facts that gave rise to the attempted stalking conviction also formed the basis of the probation revocation complaint, we could conclude that, while use of the admission by the trial court was improper, the sentence can stand as the admitted conduct was subsequently established by the *Blakely*-exempt conviction.

In their briefs, the People and Villanueva state the incident which led to the probation revocation occurred on August 9, 2005. However, the date reflected in the register of actions for the attempted stalking charge is August 26, 2003. If the information provided to us is correct, the conduct which gave rise to the probation revocation complaint and the conduct that led to the attempted stalking conviction occurred at different times. It does not appear the admitted conduct that formed the basis of the probation violation complaint—the conduct the judge considered in aggravating Villanueva's sentence—later gave rise to the attempted stalking conviction. We therefore cannot affirm the aggravated range sentence on this basis.

■ It is within the trial court's broad sentencing discretion to determine whether Villanueva should be sentenced to an aggravated range term, and if so, what specific sentence it will impose within the aggravated range. We will not presume what sentence the trial court will impose if it chooses to

consider the attempted stalking conviction. To do so would be to usurp the trial court's sentencing authority. Decisions of whether to impose an aggravated sentence and what facts warrant that sentence are left to the sound discretion of the trial court. *People v. Beatty*, 80 P.3d 847, 855 (Colo.App. 2003). However, upon remand, the trial court is not prevented from imposing a sentence in the aggravated range based on the attempted stalking conviction.[8]

When a defendant is on probation, his behavior and actions while on probation are ordinarily appropriate factors for a court to consider on resentencing. Because Villanueva's subsequent conviction resulted from his behavior while on probation, the trial court is not prevented from considering it upon resentencing on the basis that to do so would be punitive or on the basis that Villanueva's jury trial rights were not adequately protected.

## VI. Conclusion

In sum, we hold that to use a defendant's probation violation admission to aggravate his sentence beyond the presumptive range, the defendant must knowingly, voluntarily, and intelligently waive his constitutional right to have a jury determine, beyond a reasonable doubt, that the violation occurred. This is true even though he has no statutory right in Colorado to have a jury at a probation revocation proceeding. If such a waiver is not obtained from the defendant, the admission may not form the basis of an aggravated sentence. Absent a different *Blakely*-compliant or -exempt factor, the defendant may not be sentenced to an aggravated range term of confinement. Because Villanueva was sentenced to an aggravated range term based on his admission to a probation violation when he did not waive his right to a jury trial with respect to the admission, we reverse the court of appeals' decision and remand with instructions to return the case

8. Under section 16–11–206(5), if probation is revoked, the trial court may impose any sentence that "might originally have been imposed or granted." The possible penalty for attempted sexual assault on a child, sections 18–2–101, 18–3–405, a class four felony, is a presumptive range of one to three years imprisonment, with an extraordinary mitigated range of not less than six months and an aggravated range not to exceed six years imprisonment. § 18–1.3–401(1)(a)(V)(A), (6), C.R.S. (2008).

to the trial court for resentencing consistent with this opinion.

Justice COATS concurs in part and dissents in part.

Justice EID dissents.

Justice COATS, concurring in part and dissenting in part.

Although I agree that the defendant's admission to a probation violation was not a "*Blakely*-compliant" fact, capable of justifying a sentence beyond the statutory maximum or, as we have held with regard to our own felony sentencing scheme, *see Lopez v. People*, 113 P.3d 713, 730 (Colo.2005), increasing the statutory maximum sentence to include the extraordinarily aggravated range; I do not agree (for both statutory and constitutional reasons) that, upon resentencing, an intervening conviction could subject the defendant to a sentence greater than that which could originally have been imposed. I therefore dissent from the majority's advice concerning resentencing.

In reliance on *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), we have held that although a criminal defendant is entitled to have any fact that increases his penalty beyond the prescribed statutory maximum for the offense of which he is convicted submitted to a jury and proved beyond a reasonable doubt, that entitlement does not include the fact of a prior conviction. *Lopez*, 113 P.3d at 730. Although the continued viability of this exemption for prior convictions is highly suspect, *see Shepard v. United States*, 544 U.S. 13, 26 n. 5, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005); *Shepard*, 544 U.S. at 27–28, 125 S.Ct. 1254 (Thomas, J., concurring in part); *Apprendi v. New Jersey*, 530 U.S. 466, 520–21, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (Thomas, J., concurring), it has not yet been overruled. It seems clear to me, however, that the exemption, even as announced in *Apprendi* and *Blakely*, was never intended to sanction enhancing sentences in reliance upon convictions that post-date the jury verdict for which the defendant is currently being sentenced.

In *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), the Supreme Court, rather than simply noting a possible exception for prior convictions, actually upheld a sentence enhanced on the basis of prior convictions not alleged in the indictment. In doing so, the Court applied the term "prior conviction" to convictions that were not only complete before the defendant's sentencing for unlawfully reentering this country, but were in fact the impetus for his deportation in the first place. *Id.* at 226–27, 118 S.Ct. 1219. In subsequently explaining why it treated prior convictions as being different from other sentencing facts requiring jury findings, the Court emphasized its heavy reliance on the fact that recidivism was a traditional basis for increasing sentences. *Id.* at 243, 118 S.Ct. 1219. *See Apprendi*, 530 U.S. at 487–89, 120 S.Ct. 2348; *see also Jones v. United States*, 526 U.S. 227, 249, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999).

In this jurisdiction, we have long acknowledged traditional principles of criminal responsibility prohibiting the state from converting a less serious charge into a more serious one on the basis of something occurring after the charge. Largely in reliance on this very principle, we long ago concluded that our own habitual criminal statute did not permit an enhanced sentence on the basis of a conviction incurred after commission of the offense for which the defendant was being sentenced. *See People v. Nees*, 200 Colo. 392, 396, 615 P.2d 690, 693 (1980).

Unlike so-called "real offense" sentencing, *see Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *see generally*, 5 LaFave et al., Criminal Procedure § 26.4(b) (2d ed. 1999 & Supp.2004), which would permit consideration of any unrelated criminal, and even non-criminal, conduct in imposing a sentence within an allowable range, the majority would permit a conviction not yet in existence to expand the sentencing range, in effect allowing a conviction for an offense greater than the one to which the defendant actually pled. Apparently because they have necessarily been established through procedures satisfying fair notice, reasonable doubt, and jury trial guarantees,

*see Jones,* 526 U.S. at 249, 119 S.Ct. 1215, the Supreme Court so far continues to exempt prior convictions from its jury-finding requirement, but I do not believe it has ever endorsed enhanced sentencing on the basis of facts (however well established) occurring after the defendant's conviction. This is especially true with regard to guilty pleas, which require an effective waiver of a defendant's trial rights, with an understanding of the penalties to which he subjects himself. *See In re Lopez,* 148 P.3d 121 (Colo.2006).

If it were not clear enough, however, that Supreme Court jurisprudence would not sanction an increased penalty range as the result of facts occurring after the defendant's guilty plea, the General Assembly has limited the sentencing options available upon revocation of probation. Section 16–11–206, C.R.S. (2008), expressly permits a revoked probationer to be sentenced to any sentence "which might originally have been imposed," but no more. In the absence of a waiver or some *Blakely*-compliant or *Blakely*-exempt fact expanding the statutory maximum to include the extraordinarily aggravated range, by at least the time of the defendant's sentence to probation, it seems clear that a sentence in that range could not have originally been imposed.

Because I believe that a conviction sustained after the defendant was originally sentenced cannot statutorily or constitutionally support a sentence beyond the statutory maximum on resentencing, I respectfully dissent from that portion of the majority opinion.

Justice EID, dissenting.

Villanueva admitted at his probation revocation hearing that he contacted the victim in violation of a condition of his probation, and his sentence was increased beyond the presumptive range based on that admitted probation violation. *Blakely* and its progeny permit a judge to sentence a defendant beyond the presumptive range based on facts admitted by the defendant. Here, the increase in sentence complied with *Blakely* because it was based on Villanueva's own admission. Because the majority concludes otherwise, I respectfully dissent.

Under *Blakely,* "every defendant has the right to insist that the prosecutor prove to a jury all facts legally essential to the punishment" of the crime charged. *Blakely v. Washington,* 542 U.S. 296, 313, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (emphasis omitted). The problem in *Blakely* was that the defendant's aggravated sentence was based on facts found by a judge, rather than a jury. *Id.* at 303. *Blakely,* however, expressly permits a judge to impose an aggravated sentence "on the basis of the facts ... *admitted by the defendant." Id.* (internal quotation marks and emphasis omitted); *see also United States v. Booker,* 543 U.S. 220, 224, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); *Rita v. United States,* 551 U.S. 338, 127 S.Ct. 2456, 2466, 168 L.Ed.2d 203 (2007). Therefore, where a defendant admits to facts constituting a violation of a condition of probation, a judge may rely on that admission to impose a sentence within the aggravated range.

The majority mistakenly finds that the result it reaches is required by *People v. Isaacks,* 133 P.3d 1190 (Colo.2006). Unlike the majority, I do not find Villanueva to be in a "situation very similar" to that of the defendant in *Isaacks.* Maj. op. at 1235. The increase in sentence imposed on Isaacks was attributable solely to a criminal conviction (a guilty plea), 133 P.3d at 1190, not to a probation violation, as is the case here. Under longstanding U.S. Supreme Court precedent, ["p]robation revocation ... is not a stage of a criminal prosecution, [although it] does result in a loss of liberty." *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Probation revocation deprives a probationer "not of the absolute liberty to which every citizen is entitled," but rather "only of the conditional liberty properly dependent on observance of special [probation] restrictions." *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (discussing parole revocation); *see also Gagnon,* 411 U.S. at 782, 93 S.Ct. 1756 (applying *Brewer's* analysis to probation revocation). Therefore, "the full panoply of [constitutional] rights due a defendant in [a criminal prosecution]" is not required in a probation revocation proceeding, *Brewer,* 408 U.S. at 480, 92 S.Ct. 2593, including the right to a

jury trial. *See Byrd v. People,* 58 P.3d 50, 56 (Colo.2002); *see also United States v. Carlton,* 442 F.3d 802, 808–09 (2d Cir.2006) (rejecting Blakely challenge to resentencing after revocation of supervised release by judge using a preponderance of the evidence standard on ground that increase in sentence was attributable to supervised release violation, not to initial original conviction).

Moreover, our concern in *Isaacks* with an implied admission simply is not present here. In *Isaacks,* the People argued that the defendant had impliedly admitted facts contained in a presentence report by not objecting to the report. 133 P.3d at 1192. In fact, the question on which we granted certiorari was "[w]hether a defendant's failure to make corrections or additions to his presentence report when asked by the court constitutes an admission of information not related to the elements of the crime [that] permits an aggravated sentence under *Blakely* ...." *Id.* We rejected the People's implied admission argument, holding that "a defendant's failure to object to facts in a presentence report does not constitute an admission for purposes of *Blakely* ... unless the defendant makes a constitutionally sufficient waiver of his right to a jury trial on the facts contained in the report." *Id.* Significantly, a presentence report is written by a probation officer, not the defendant. *See* Crim. P. 32(a)(1) ("[T]he probation officer shall make an investigation and written report to the court before the imposition of sentence or granting of probation."). Thus, a factual statement in a presentence report such as the one at issue in *Isaacks*— although it may be based on information provided by the defendant—comes from the probation officer. Here, by contrast, the admission came from the defendant himself during the probation hearing. Because there is no argument that Villanueva's admission was implied, *Isaacks* does not control the outcome of this case.

The majority requires that, before an admission can *ever* be used as the basis for a sentence in the aggravated range, the defendant must *specifically* be informed—prior to making any admissions—of his right to have a jury determine the facts necessary for an aggravated sentence. *See* maj. op. at 1234.

Where that has not happened, according to the majority, the admission must be ignored. *Id.* In this case, the majority sets aside Villanueva's admission on this ground even though Villanueva waived his right at sentencing "to a jury of 12 people on all issues of guilt," was informed at probation revocation that he had the right to a hearing at which "the district attorney would have to prove by a preponderance of the evidence" that he had violated a condition of his probation, and was found to have understood "his right to a hearing and ... knowingly and voluntarily admitted to violation of probation."

While there may be dicta in *Isaacks* suggesting such an across-the-board requirement of a specific warning, I would not read the case so broadly. The fact that the presentence report in *Isaacks* contained statements that could be read as implied admissions may have justified a cautious approach toward those statements; there is nothing of similar concern here.

In sum, *Blakely* and *Isaacks* addressed instances in which aggravating facts were proven through evidence beyond the defendants' own admissions. By contrast, Villanueva's aggravated sentence was based solely on his own admission. Because I would find his sentence proper under *Blakely* and *Isaacks,* I respectfully dissent.