2014 COA 131

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Antonio JASO, Defendant–Appellant.**

**Court of Appeals No. 12CA1072**

Colorado Court of Appeals, Div. V.

Announced October 9, 2014

**1176**

John W. Suthers, Attorney General, Carmen Moraleda, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Adam Mueller, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

## Opinion by JUDGE GRAHAM

¶ 1 Defendant, Antonio Jaso, appeals the felony judgment of conviction and sentence entered by the trial court after a jury found him guilty of misdemeanor violation of a protection order. Because we conclude that under the circumstances here, the habitual domestic violence offender statute, section 18–6–801(7), C.R.S.2014 (HDVO statute) required the trial court to make findings of fact that increased defendant's punishment, we further conclude defendant's Sixth Amendment right to a jury trial under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), was violated. Consequently, we reverse the judgment and remand for entry of judgment and resentencing on a class 1 extraordinary risk misdemeanor.

## I. Background

¶ 2 Defendant was charged with violation of a protection order after he sent the victim, A.K., a letter addressed to their minor son through a fellow inmate at the county jail where he was in custody.

¶ 3 In 2010, defendant and A.K. were living together and had a son. While A.K. was holding the infant, defendant attacked her.

She then sought and received a civil protection order against defendant. The terms of the order prevented defendant from contacting A.K. directly or through a third person except by use of text message, and then only so long as the message concerned arranging visitation with the parties' son. Defendant was advised that he was excluded from the family home and that the order could only be changed by a judge. He was served in open court with the written protection order.

¶ 4 In September 2011, A.K. received an envelope in the mail from an unknown person addressed to her son and containing a letter from defendant directed to her. In part, the letter asked that A.K. "hear [him] out," forgive him, give him a second chance to get back together, and importuned her to not "stay (sic) anything to anybody."

¶ 5 A.K. contacted the police and defendant was charged with violation of a protection order, section 18–6–803.5(1), 2(a), C.R.S. 2014, a class 1 extraordinary risk misdemeanor, and a habitual domestic violence offender sentence enhancer, section 18–6–801(7) (the HDVO statute), a class 5 felony.

¶ 6 Prior to jury deliberations, and over defendant's objection, the trial court refused to provide the jury with a tendered instruction and verdict form requiring the jury to determine whether defendant's violation of the protection order was "an act of domestic violence."

¶ 7 The jury convicted defendant of the charged misdemeanor. Thereafter, the court held a trial on the habitual charge. First, the court determined that the violation of the protection order was an act of domestic violence. Second, the court concluded that the prosecution had proved that defendant had previously been convicted three times of domestic-violence-related crimes. The result was that under the HDVO statute, the trial court convicted defendant of a class 5 felony and sentenced him to thirty months in the custody of the Department of Corrections.

## II. Application of *Apprendi* and *Blakely* to Defendant's Sentence Under the HDVO Statute

### A. Standard of Review

¶ 8 "A trial court has broad discretion over sentencing decisions." *Villanueva v.*

*People,* 199 P.3d 1228, 1231 (Colo.2008). However, we review constitutional challenges to sentencing determinations de novo. *Lopez v. People,* 113 P.3d 713, 720 (Colo.2005).

¶ 9 "When a defendant has preserved a challenge based on *Blakely v. Washington* at sentencing, we first determine whether a *Blakely* error occurred." *Villanueva,* 199 P.3d at 1231. "Because such an error is of constitutional dimension, the sentence must be vacated unless the error was harmless beyond a reasonable doubt." *Id.*

¶ 10 "We must construe statutes to avoid constitutional conflicts if possible." *Lopez,* 113 P.3d at 728. When interpreting a statute, our review is de novo. *People v. Perez,* 2013 COA 65, ¶ 12, —— P.3d ——. It is our primary goal to discern the legislature's intent in drafting the statute. *Montes–Rodriguez v. People,* 241 P.3d 924, 927 (Colo.2010). We therefore first look to the plain language of the statute. *Id.* If the legislative intent is clear from the plain language of the statute, we will not resort to other rules of statutory interpretation. *Jefferson Cnty. Bd. of Equalization v. Gerganoff,* 241 P.3d 932, 936 (Colo.2010).

### B. HDVO Statute

¶ 11 The HDVO statute provides:

In the event a person is convicted in this state on or after July 1, 2000, of any offense which would otherwise be a misdemeanor, *the underlying factual basis of which has been found by the court on the record to include an act of domestic violence as defined in section 18–6–800.3(1),* and that person has been three times previously convicted, upon charges separately brought and tried and arising out of separate and distinct criminal episodes, of a felony or misdemeanor or municipal ordinance violation, the underlying factual basis of which was found by the court on the record to include an act of domestic violence, the prosecuting attorney may petition the court to adjudge the person an habitual domestic violence offender, and such person shall be convicted of a class 5 felony. If the person is adjudged an habit-

ual domestic violence offender, the court shall sentence the person pursuant to the presumptive range set forth in section 18–1.3–401 for a class 5 felony. The former convictions and judgments shall be set forth in apt words in the indictment or information.

§ 18–6–801(7) (emphasis added).

¶ 12 An act of "domestic violence" is "an act or threatened act of violence" against a person with whom the perpetrator has had an "intimate relationship," such as current married persons, persons who had a past marriage, persons who currently or once lived together, and parents of the same child. § 18–6–800.3, C.R.S.2014. Importantly, an act of domestic violence "also includes *any other crime* against a person ... *when used as a method of coercion, control,* punishment, intimidation, or revenge directed against a person with whom the actor is or has been involved in an intimate relationship." § 18–6–800.3(1) (emphasis added).

¶ 13 "Under Colorado's domestic violence statute, domestic violence is not its own separate crime." *People v. Disher,* 224 P.3d 254, 256 (Colo.2010). "When the elements of the statute are met, a judge may find that a crime committed by a defendant constitutes domestic violence." *Id.* (citing § 18–6–801). "A finding of domestic violence leads to a sentence enhancer requiring the defendant to complete a treatment evaluation and a treatment program in addition to serving whatever sentence the defendant receives for the underlying crime." *Id.*

¶ 14 Under the HDVO statute, then, a trial court may determine that a misdemeanor has the underlying factual basis of domestic violence. If so, the conviction can be added to three prior convictions of domestic violence to warrant sentencing for a class 5 felony.

### C. *Apprendi* and *Blakely*

¶ 15 "The Sixth and Fourteenth Amendments to the United States Constitution require that any fact that increases the penalty for a crime beyond the statutory maximum, except the fact of a prior conviction, must be submitted to a jury and proven beyond a reasonable doubt." *People v.*

*Montour,* 157 P.3d 489, 495 (Colo.2007); *see Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *see also United States v. Booker,* 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."). Therefore, "[t]he legislature may not require judges to impose enhanced sentences based on constitutionally impermissible judicial fact-finding." *Lopez,* 113 P.3d at 731; *see Blakely,* 542 U.S. at 308–09, 124 S.Ct. 2531 ("[T]he Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury.").

¶ 16 "The analytical foundation underlying the *Apprendi* and *Blakely* decisions is that, if a court uses a fact to aggravate a sentence beyond the presumptive range, regardless of whether the fact is termed a 'sentencing factor' or an 'element,' a jury must determine it beyond a reasonable doubt." *Villanueva,* 199 P.3d at 1234; *see Lopez,* 113 P.3d at 726 ("If [a sentencing] analysis requires judicial fact-finding to which the defendant has not stipulated, then the rule of *Blakely* applies and any additional facts used to aggravate the sentence must be *Blakely*-compliant or *Blakely*-exempt."); *see also DeHerrera v. People,* 122 P.3d 992, 993 (Colo.2005) (describing *Blakely*-compliant and *Blakely*-exempt factors).

¶ 17 "The focus of the Sixth Amendment inquiry is on the process of finding those facts and whether it sufficiently complied with the defendant's constitutional jury trial protections." *Lopez,* 113 P.3d at 727.

### D. Analysis

¶ 18 Defendant argues that when the trial court—and not the jury—found the facts necessary to sentence him as a habitual offender it violated his Sixth Amendment rights. Because we conclude the trial court's domestic violence finding was not reflected in the jury's verdict, we agree.

¶ 19 The jury here convicted defendant of misdemeanor violation of a protection order. The elemental instruction given to the jury required the jury to find:

1. That the Defendant,

2. [i]n the State of Colorado, at or about the date and place charged,

3. [k]nowingly

4. contacted, harassed, injured, intimidated, molested, threatened, or touched, [A.K.], the protected person,

5. a type of conduct prohibited by a valid protection order,

6. issued pursuant to Colo.Rev.Stat. § 13–14–102

7. [a]fter the defendant had been personally served with a protection order that identified the defendant as a restrained person or otherwise had acquired from the court or law enforcement personnel actual knowledge of the contents of a protection order that identified the defendant as a restrained person.

*See* § 18–6–803.5(1)(a).

¶ 20 After defendant was found guilty by the jury, the trial court held a habitual criminal trial. In order to adjudicate defendant a habitual domestic violence offender, the court was required, pursuant to section 18–6–801(7), to find that (1) defendant and A.K. were (a) in an intimate relationship and (b) the violation of the protection order was "used as a method of coercion, control, punishment, intimidation, or revenge"; and (2) defendant had previously been convicted of three domestic violence crimes. § 18–6–800.3(1).

¶ 21 We conclude the jury verdict did not reflect a finding of "coercion, control, punishment, intimidation, or revenge," because the necessary elements of the charged crime, at a minimum, required the jury to find only that defendant contacted A.K. knowing there was a protection order in place. Therefore, when the trial court made its HDVO deter-

mination and found that defendant's contact with A.K. was made for the purpose of coercion or control, the court engaged in constitutionally impermissible judicial fact-finding. *Lopez*, 113 P.3d at 731; *see Blakely*, 542 U.S. at 308–09, 124 S.Ct. 2531.

¶ 22 We reject the People's suggestion that because section 18–6–801(7) includes the consideration of *Blakely*-exempt prior convictions, the trial court's reliance on non-*Blakely*-exempt or *Blakely*-compliant fact-finding can never be error. *See Lopez*, 113 P.3d at 731 (One "valid factor supporting a discretionary aggravated sentence ... satisfies constitutional and statutory requirements for the protection of defendants."); *People v. Leske*, 957 P.2d 1030, 1043 (Colo.1998) ("[W]here the sentencing court finds several factors justifying a sentence in the aggravated range, only one of those factors need be legitimate to support the sentencing court's decision." (internal quotation marks omitted)). Like the sentencing statute considered in *Montour*, 157 P.3d at 496–97, which required the court to apply a three-part analysis, here, the HDVO statute requires the court to engage in a two-part analysis—first, whether the current conviction "include[s] an act of domestic violence" and second, whether a defendant was "three times previously convicted ... of a felony or misdemeanor ... the underlying factual basis of which was found ... to include an act of domestic violence." § 18–6–801(7). Therefore, the reasoning in *Lopez* that so long as one *Blakely*-compliant or *Blakely*-exempt factor is considered in aggravated sentencing the sentence may be affirmed, does not apply under the statutory scheme presented here. *See* § 18–6–801(7).

¶ 23 We note that in different circumstances the trial court's finding under the HDVO statute may not violate *Apprendi* and Blakely. However, in a case where the prosecution seeks to increase a defendant's misdemeanor to a felony pursuant to the HDVO statute and the jury's verdict does not reflect a finding of domestic violence, the defendant is entitled to have that question submitted to the jury.

III. Conclusion

¶ 24 The parties agree that resentencing is a proper remedy. Accordingly, the judgment of conviction is reversed and the case is remanded to the trial court for entry of judgment of conviction and resentencing on a class 1 extraordinary risk misdemeanor.

JUDGE LICHTENSTEIN and JUDGE BOORAS concur.