19CA0820 Peo v Witherspoon 10-21-2021 COLORADO COURT OF APPEALS Court of Appeals No. 19CA0820 El Paso County District Court No. 18CR3767 Honorable Jill M. Brady, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Calil Jamari Witherspoon, Defendant-Appellant. JUDGMENT AFFIRMED Division I Opinion by JUDGE DAILEY Dunn and Kuhn, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced October 21, 2021 Philip J. Weiser, Attorney General, Hanna Bustillo, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Elyse Maranjian, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Calil Jamari Witherspoon, appeals the judgment of conviction entered on jury verdicts finding him guilty of attempted first degree assault, menacing, and prohibited use of a weapon. He contends that the trial court (1) clearly erred by denying his claim under Batson v. Kentucky, 476 U.S. 79 (1986), challenging the prosecution’s use of a peremptory strike on a prospective juror, and (2) erred in not merging his conviction for prohibited use of a weapon into his conviction for attempted first degree assault. We discern no reversible error and therefore affirm. I. Background ¶ 2 The charges in this case were based on Witherspoon’s act of firing a gunshot in the presence of his ex-girlfriend. The key disputed issue at trial was whether Witherspoon intended to shoot her, or instead fired the gunshot to scare her. ¶ 3 The jury acquitted Witherspoon on the most serious charge of attempted first degree murder, but convicted him of the remaining charges. II. The Batson Claim ¶ 4 Witherspoon’s Batson claim is based on the prosecutor’s use of a peremptory challenge to excuse prospective juror T.D. 
2 ¶ 5 As voir dire began, fourteen prospective jurors were seated in the jury box and the remaining fifty-one prospective jurors were seated in the courtroom gallery. T.D. was prospective juror number 28, with thirteen other prospective jurors seated before her in the gallery. ¶ 6 T.D. identified herself as African-American on the written juror questionnaire. In the space on that questionnaire for jurors to provide any comments they “feel are important,” T.D. wrote, “[t]he wait to enter the courthouse was exemly long and it freezing cold outside and enhaling 2nd hand smoke.” ¶ 7 During voir dire, the only comments T.D. made were in the following exchange with defense counsel, after counsel had asked the venire members what their definition of a child was (which was presumably based on the fact that Witherspoon was in his late teenage years at the time of the crime): Defense Counsel: [T.D.,] [a]ny thoughts, opinions? T.D.: My opinion of a child is once he can’t be on my income tax, they are not a child. Defense Counsel: I think that’s what my parents said too. 
3 T.D.: But I will have to listen to the whole thing, and the prosecution would have to prove that the person is guilty. ¶ 8 After some prospective jurors were dismissed for cause, the parties began using their peremptory challenges. When defense counsel used her sixth and final peremptory challenge, it was T.D.’s turn to take that empty seat in the jury box. The prosecutor, then exercised a peremptory challenge on T.D. ¶ 9 Defense counsel raised a Batson challenge, arguing, [T.D.] self-identified on the jury questionnaire as African-American. She’s also apparently African-American. And the prosecution did not ask [T.D.] one question during jury questioning. When the defense asked her a question, the only responses she had was, I think kids are kids until they get off my income tax, and that she would have to listen to the whole story. There are similar white women of her age who have not been exercised for challenge. ¶ 10 The prosecutor responded, She wrote in her questionnaire that she was upset about the wait to get into the courthouse and the secondhand smoke and that it was cold. Her whole demeanor all day looks like we’ve been putting her out, sour look on her face. The only time she cracked a smile and seemed engaged was when she made the joke about a kid is not a kid when they are not on your taxes anymore. Other than that she just 
4 gave body language. The whole time shelooked like she was not happy to be here. ¶ 11 In response, defense counsel disputed the prosecutor’s characterization of T.D.’s demeanor. According to defense counsel, she had a better view than the prosecutor of T.D. during voir dire, T.D. had been “been listening and paying attention,” and T.D. made a “joke” in response to the question about the definition of a child. Defense counsel also argued that if the prosecutor had a concern about T.D.’s demeanor, the prosecutor should have questioned T.D. on that issue, but did not ask T.D. any questions. ¶ 12 The court denied Witherspoon’s Batson challenge, explaining its ruling as follows: [E]ven saying that [the] defense has made out a prima facie case that the prosecution struck [T.D.] because of her race, I think that [the prosecutor] has provided a credible race-neutral reason for striking [T.D.] The Court would note that [the prosecutor] has given the reason that [T.D.] expressed what I’m characterizing as sort of a sour attitude toward the system or process earlier in her jury questionnaire by indicating that she didn’t like having to wait in line or the smell of secondhand smoke, and [the prosecutor] observed that [T.D.] was disengaged from the process and that’s why she struck her, not on the basis of race. 
5 So it’s up to me to determine whether or not I believe counsel has raised a neutral explanation for peremptory challenge. The best evidence often will be the demeanor of the attorney who exercises the challenge[.] . . . The critical question becomes the persuasiveness of the prosecutor’s justification for the peremptory challenge. And I’m persuaded by [the prosecutor’s] offered reason. The court is to gauge the prosecutor’s credibility by evaluating her demeanor, how reasonable or improbable the explanations are and by whether the proffered rationale has some basis in accepted trial strategy. So again, I would find that [the prosecutor] has given race-neutral reasons that I find to be credible, and so I deny the challenge. ¶ 13 After the final jury was selected, the parties made a further record regarding the prosecutor’s peremptory challenge of T.D. The defense argued that even if the prosecutor sincerely believed that T.D. was not happy to be there and had a “sour look” on her face, that could be based on unconscious internalization of racial stereotypes. The prosecutor argued that there were other minorities on the final jury who she did not exercise peremptory challenges on, and that she exercised her challenge on T.D. in part because she wanted prospective juror D.A. to serve on the jury (D.A. was the 
6 final juror seated after the prosecutor chose not to use any more peremptory challenges). A. Applicable Law and Standard of Review ¶ 14 “Equal justice under law requires a criminal trial free of racial discrimination in the jury selection process.” Flowers v. Mississippi, 588 U.S. ___, ___, 139 S. Ct. 2228, 2242 (2019). Under Batson and its progeny, a prosecutor may not discriminate on the basis of race when exercising peremptory challenges of prospective jurors. Flowers, 588 U.S. at ___, 139 S. Ct. at 2234. ¶ 15 Trial courts use a three-step analysis to determine whether a prosecutor exercised a peremptory challenge because of a prospective juror’s race. People v. Wilson, 2015 CO 54M, ¶ 10 (citing Batson, 476 U.S. at 96-98). First, the defendant must make a prima facie showing that the prosecutor struck a prospective juror on the basis of race. Id. If the defendant does so, the prosecutor must proffer a race-neutral reason for excusing the prospective juror. Id. After the prosecutor does so and the defendant is given a chance to rebut the prosecutor’s explanation, the trial court determines, at the third step, whether the defendant has established purposeful discrimination by the prosecutor. Id. 
7 ¶ 16 Here, Witherspoon challenges only the trial court’s ruling at the third step that the prosecutor’s race-neutral reason for striking T.D. was credible, and not a pretext for discrimination. “The inquiry at step three requires the trial court to decide whether to believe [the prosecutor’s] race-neutral explanation for a peremptory challenge.” Id. at ¶ 13. “‘[T]he best evidence often will be the demeanor of the attorney who exercises the challenge,’ evaluation of which lies ‘peculiarly within a trial judge’s province.’” Id. (quoting Hernandez v. New York, 500 U.S.352, 365 (1991)). We therefore review the trial court’s factual determination at step three only for clear error. Id.; see also Flowers, 588 U.S. at ___, 139 S. Ct. at 2244 (“[T]he appellate standard of review of the trial court’s factual determinations in a Batson hearing [is] ‘highly deferential.’” (quoting Snyder v. Louisiana, 552 U.S. 472, 479 (2008))). B. Analysis ¶ 17 In contending that the trial court clearly erred at step three in denying his Batson challenge, Witherspoon first argues that the record does not support that T.D. was “disengaged” during voir dire. However, the record also does not indicate that the contrary is true. 
8 ¶ 18 More importantly, though, to frame the disputed issue as T.D.’s level of “engagement” does not encapsulate the nuances of the parties’ arguments regarding T.D.’s demeanor. The prosecutor’s expressed reasons for exercising the peremptory was that T.D. was “upset” about the wait to get into the courthouse, “looked like she was not happy” to be there, and had a “sour look on her face.” Defense counsel’s response that T.D. was “listening and paying attention” is not inconsistent with the prosecutor’s claim that T.D. looked like she “was not happy” to be there and had a “sour look” on her face. The same is true of T.D.’s statement about a child being on her income taxes. ¶ 19 Certainly, if the trial court had made an express finding about T.D.’s demeanor, we would have a better record to evaluate the parties’ arguments on appeal. See Thaler v. Haynes, 559 U.S. 43, 48 (2010) (“[W]here the explanation for a peremptory challenge is based on a prospective juror’s demeanor, the judge should take into account, among other things, any observations of the juror that the judge was able to make during the voir dire.”). ¶ 20 But the trial court did expressly find that the prosecutor’s stated reasons for exercising the peremptory challenge were 
9 credible, thus implicitly crediting the prosecutor’s explanation. We have no basis to question that credibility determination. See id. at 47-49 (a trial court may accept a prosecutor’s demeanor-based explanation for exercising a peremptory challenge even if the trial court did not observe or could not recall the prospective juror’s demeanor); Snyder, 552 U.S. at 479 (“[D]eference is especially appropriate where a trial judge has made a finding that an attorney credibly relied on demeanor in exercising a strike.”). ¶ 21 On a related point, Witherspoon asserts that other prospective jurors also appeared to be disengaged during voir dire, and he argues that T.D. was similarly situated to those prospective jurors in terms of their level of engagement. Here too, though, the prospective jurors’ level of “engagement” — for example, whether they raised their hand to respond to questions posed generally to their section of the courtroom gallery — was a distinct issue from T.D.’s particular (alleged) demeanor of being “not happy” to be there and having a “sour look” on her face. The record does not disclose any other prospective jurors having those particular (alleged) attributes. 
10 ¶ 22 Witherspoon also emphasizes that if the prosecutor had concerns about T.D.’s demeanor, she should have posed questions to T.D. on that issue, but failed to do so. He relies on People v. Collins, 187 P.3d 1178 (Colo. App. 2008), and People v. Gabler, 958 P.2d 505 (Colo. App. 1997), for the proposition that when a prosecutor does not question a prospective juror about the facts related to the reason for the peremptory challenge, it suggests pretext. But the peremptory challenges in those cases related to substantive information about the prospective jurors, not their demeanor. In Collins, the prosecutor was faulted for not asking a prospective juror about “her husband’s domestic violence case.” 187 P.3d at 1183. And in Gabler, the prosecutor was faulted for not asking one prospective juror about “frequently watch[ing] Court TV,” and for not asking another prospective juror about whether she would be “biased against police because her friend had been arrested” and “distracted by work responsibilities.” 958 P.2d at 508. Those are substantive concerns, not demeanor-based concerns, and we are not aware of any authority indicating that the prosecutor was required to question T.D. about her demeanor before exercising a peremptory challenge on that basis. 
11 ¶ 23 Further, Witherspoon argues that the prosecutor’s explanation that she wanted prospective juror D.A. to serve on the jury was pretextual because D.A. served only as the jury alternate. We are unpersuaded. Although a jury alternate might ultimately be excused before deliberations begin, a prosecutor may justifiably place importance on the initial decision of who serves in that role, and that does not show pretext. ¶ 24 Finally, it is certainly relevant that two other prospective jurors who identified as African-American on their juror questionnaires ultimately served on the jury (prospective juror A.R. identified solely as African-American, while prospective juror S.C. identified as both African-American and American Indian), and that the prosecutor accepted the seated jury without using all of her peremptory challenges. See People v. Farbes, 973 P.2d 704, 706 (Colo. App. 1998) (“[R]emoval from the venire of all or most of the members of the identified group” indicates discriminatory intent.). ¶ 25 On this record, we discern no clear error in the trial court’s decision to credit the prosecutor’s stated reasons and deny Witherspoon’s Batson challenge. 
12 III. The Merger Issue ¶ 26 Witherspoon also contends that his conviction for prohibited use of a weapon is a lesser included offense of, and therefore must be merged into, his conviction for attempted first degree assault. We disagree. A. Standard of Review ¶ 27 Whether convictions for different offenses merge is a question of law that we review de novo. Page v. People, 2017 CO 88, ¶ 6. B. Analysis ¶ 28 Under section 18-1-408(1)(a), C.R.S. 2021, a defendant may not be convicted of two offenses if one is included in the other, as defined in section 18-1-408(5). Section 18-1-408(5) lists three ways in which an offense is “included” in another. ¶ 29 Witherspoon argues that subsection 18-1-408(5)(c) applies here (but does not argue that subsections (5)(a) or (5)(b) apply). Subsection 18-1-408(5)(c) provides that one offense is “included” in another if it “differs” from the other offense “only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission.” Id. 
13 ¶ 30 Witherspoon was convicted of prohibited use of a weapon under section 18-12-106(1)(b), C.R.S. 2021, which criminalizes discharging a firearm recklessly or with criminal negligence. ¶ 31 Witherspoon was also convicted of attempted first degree assault under section 18-3-202(1)(a), C.R.S. 2021, and section 18-2-101, C.R.S. 2021, for attempting to cause serious bodily injury to the victim by means of a deadly weapon, with the intent to cause serious bodily injury to her. ¶ 32 The issue is how those two offenses “differ.” § 18-1-408(5)(c). There are four relevant questions to consider:  Do they differ in the first way specified in section 18-1-408(5)(c): “a less serious injury or risk of injury to the same person, property, or public interest”?  Do they differ in the second way specified in 18-1-408(5)(c): “a lesser kind of culpability”?  Do they differ in both of those ways?  And do they differ in any other ways? ¶ 33 Witherspoon contends that the two offenses differ in both of the ways specified in section 18-1-408(5)(c), but not in any other ways, and therefore merger is required under that subsection. 
14 ¶ 34 His contention fails for two reasons. First, after the parties completed the briefing in this appeal, a division of this court issued its opinion in People v. Pellegrin, 2021 COA 118. There, the division engaged in a thorough analysis and concluded that section 18-1-408(5)(c) applies “only where the lesser offense differs in the degree of injury or risk of injury or in the kind of culpability, but not both.” Pellegrin, ¶ 68. We agree with the division’s analysis and conclusion. See also People v. Palmer, 944 P.2d 634, 639 (Colo. App. 1997) (concluding that menacing is not a lesser included offense of second degree assault under section 18-1-408(5)(c) “because the offenses differ with respect to both the culpability required and the injury or risk of injury required”), rev’d on other grounds, 964 P.2d 524 (Colo. 1998). ¶ 35 Witherspoon concedes that prohibited use of a weapon differs from attempted first degree assault both in the degree of injury or risk of injury and in the kind of culpability. We agree, so his claim necessarily fails under Pellegrin. ¶ 36 The second reason Witherspoon’s contention fails is that, as the People argue, the two offenses at issue differ in a third way not specified in section 18-1-408(5)(c): who is victimized by each 
15 offense. Witherspoon’s conviction for attempted first degree assault pertained to the particular victim in this case. However, the offense of prohibited use of a weapon does not require any particular person to be victimized by the conduct. ¶ 37 That makes this case similar to People v. Clary, in which a division of this court held that reckless driving is not a lesser included offense of vehicular homicide or vehicular assault, because reckless driving creates a more generalized risk of injury to anyone in the vicinity, whereas both vehicular homicide and vehicular assault have specific victims. See 950 P.2d 654, 658-59 (Colo. App. 1997). ¶ 38 Section 18-1-408(5)(c) specifies that it applies where the two offenses differ “only” in one of the two enumerated ways: “a less serious injury or risk of injury to the same person, property, or public interest” or “a lesser kind of culpability.” Id. (emphasis added). Here, because one offense requires a specific victim, but the other offense does not require any victim at all, section 18-1-408(5)(c) does not apply. 
16 ¶ 39 We therefore conclude that the trial court not err by declining to merge Witherspoon’s convictions for prohibited use of a weapon and attempted first degree assault. IV. Disposition ¶ 40 The judgment is affirmed. JUDGE DUNN and JUDGE KUHN concur.