22CA0767 Peo v Jacobson 05-29-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA0767
City and County of Denver District Court No. 09CR510
Honorable Kandace C. Gerdes, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Sandra L. Jacobson,

Defendant-Appellant.

---

ORDERS AFFIRMED

Division A
Opinion by JUDGE BROWN
Dunn and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 29, 2025

---

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Sandra L. Jacobson, appeals the district court's orders on a series of motions she filed seeking to correct the restitution order entered in her criminal case. She contends that the court violated her procedural due process rights by failing to order the state to refund restitution she alleges she overpaid. We affirm.

## I.    Background

¶ 2     In 2009, Jacobson was arrested and charged with several criminal counts arising out of a fatal car crash she caused while driving under the influence (DUI). There were three victims, one of whom survived. In 2010, a jury found Jacobson guilty of two counts of vehicular homicide (DUI), two counts of careless driving resulting in death, one count of DUI, one count of leaving the scene of an accident, and one count of third degree assault. The district court sentenced Jacobson to a total of thirty-six years in the custody of the Department of Corrections (DOC).

¶ 3     The court also ordered restitution in the total amount of $22,372.72. Of that amount, $16,372.72 was to be paid to the family of one of the deceased victims, Kathleen Krasniewicz, and $6,000 was to be paid to the Crime Victim Compensation Board

1

(CVCB) for amounts it paid to victim Nejmudean Abdusalam for lost wages. No restitution was ordered related to the third victim. The mittimus entered following sentencing reflected an "assessed" amount totaling $25,247.42.[1] Following a lengthy direct appeal, a division of this court affirmed Jacobson's convictions. *See People v. Jacobson*, 2014 COA 149, *rev'd*, 2017 CO 28, *aff'd on remand*, 2017 COA 92.

¶ 4     On May 12, 2012, Jacobson entered into a settlement agreement with Krasniewicz's family under which Jacobson's insurance company would pay $250,000 and the family would release Jacobson from "any and all claims, actions, demands, causes of action . . . and survivorship claims."[2]

¶ 5     More than nine years later, in September 2021, Jacobson filed a motion to decrease restitution to "account[] for applicable insurance setoffs" under section 18-1.3-603(3)(b)(II), C.R.S. 2024.

---

[1] Jacobson argued in the district court that the assessed amount was incorrect because it was more than the amount of restitution ordered, but the court later clarified that the assessed amount reflected in the mittimus was "comprised of restitution, interest as to the victim's compensation fund portion only, and fees and costs."

[2] Jacobson entered into a similar settlement with the third victim, but that agreement is not relevant to Jacobson's appeal as no restitution was ordered for the third victim.

She notified the district court of the Krasniewicz settlement and asked the court to order the CVCB to "reimburse [her] for any and all monies paid to date over the past several years included within the applicable setoff and per the proceeds reflected in the settlement agreements." She argued that a victim who is compensated first by the CVCB and then by a collateral source is required to refund overpaid restitution to the CVCB under section 24-4.1-110(2), C.R.S. 2024. The prosecution conceded that Jacobson was "entitled to a setoff against the $16,372.72 portion of the restitution order owed to" the Krasniewicz family but that she was "not entitled to a setoff against the remaining $6,000 of her restitution debt" because she did not produce "any evidence that her insurance company settled with [Abdusalam]."

¶ 6 In December 2021, the district court granted Jacobson's motion in part, reasoning that she was "entitled to have restitution adjusted as it relates to the restitution order towards" the Krasniewicz family, but denied her request as to the $6,000 obligation to the CVCB. The court ordered that "the register of action . . . reflect that the amount due [to the Krasniewicz family] has been paid through a setoff through a civil proceeding." The

3

court later entered an amended mittimus that reduced the *outstanding* debt Jacobson owed to the Krasniewicz family to zero and reflected a new "balance" of $9,696.95. Neither party appealed this order.

¶ 7 In March 2022, Jacobson moved to "correct restitution" and for a refund of amounts she overpaid. She argued that, following the setoff, the total amount of restitution she owed was $6,000 to the CVCB. She asserted that she had paid more than $14,671.47 in restitution, so she had more than satisfied the $6,000 obligation plus interest. She asked the court to order that her restitution obligation had been satisfied and that she was entitled to be reimbursed for any amount she paid above $6,000 plus interest and to amend the mittimus accordingly.

¶ 8 The district court denied the motion. First, it explained that of the $14,671.47 in restitution Jacobson had paid, $13,315.43 had been paid to the Krasniewicz family but only $1,356.04 had been

paid to the CVCB.[3]  It reasoned that because Jacobson's restitution debt to the CVCB had not been satisfied, the mittimus was correct.[4]

¶ 9    In April 2022, Jacobson filed a motion to reconsider.  This time, she argued that the DOC was required to credit the restitution it collected from her first to the CVCB before paying the Krasniewicz family.  She asserted that the DOC had "seized" more than $16,000 from her, which was significantly more than the $6,000 plus interest she owed to the CVCB.  And she argued that the insurance setoff fully satisfied her obligation to the Krasniewicz family "effective May 12, 2012."  She again asked the court to order that she had fully satisfied all restitution ordered in her case.  And she argued that due process principles required the state to reimburse her for the amounts she paid "over and above what was and is necessary to have satisfied the restitution obligation following the statutorily required decrease in that obligation."

¶ 10    The district court denied the motion, reasoning that it was "without authority to grant" Jacobson a refund and that,

---

[3] It is unclear to us how the district court came up with these numbers.
[4] The district court also ordered the Krasniewicz family to return the $13,315.43 it had been paid but later vacated that part of the order.

5

"[p]rocedurally, it was the parties' responsibility to lodge any settlement set-off with the Court to stay garnishment."

## II. Analysis

¶ 11 Jacobson contends that the district court violated her procedural due process rights when, "after it granted an insurance set-off, [it] failed to impose the set-off" and refused to order the state to reimburse her for "overpaid restitution." But in December 2021, the court in fact imposed a setoff and reduced Jacobson's remaining obligation to the Krasniewicz family to zero; so Jacobson must be arguing that the court should have decreased her restitution obligation to the Krasniewicz family *retroactive* to the date of the settlement in May 2012.

¶ 12 As best we understand Jacobson's argument, it goes like this: (1) when the court granted a setoff for the settlement with the Krasniewicz family, it should have decreased the restitution order as to the Krasniewicz family to zero retroactively to the date of the

2012 settlement; (2) the DOC[5] was statutorily obligated to use the restitution it collected from Jacobson to pay the CVCB first; (3) had the DOC correctly prioritized which victim it paid, Jacobson still would have been paying the CVCB when the Krasniewicz obligation was zeroed out; (4) Jacobson is entitled to a refund of any amount she paid above the $6,000 owed to the CVCB (plus interest); and (5) by refusing to order the state to reimburse her for the overpaid restitution, the court violated her right to procedural due process.

¶ 13     We conclude that Jacobson was not entitled to a retroactive reduction of her restitution obligation to the Krasniewicz family. Instead, once she moved to decrease the restitution order, she was entitled to have the outstanding balance reduced to zero. To the extent Jacobson contends that this result violates her right to due process, we disagree.

¶ 14     As to Jacobson's other contentions — that the DOC failed to pay her victims in a certain priority; the DOC continues to collect

---

[5] Jacobson argues that the clerk of the district court or someone else within the judicial department was also responsible for paying the victims, but nothing in the record reveals precisely how money was collected from Jacobson or distributed to the CVCB or the Krasniewicz family. We use "the DOC" as a proxy for whatever parties may be involved.

restitution from her in error because her restitution obligation has been satisfied; and she is entitled to a refund of restitution she overpaid as a result of the DOC's actions — we conclude that these issues must be pursued, if at all, in a civil action against the DOC and any other parties responsible for collecting restitution from Jacobson and paying her victims.

### A.     Standard of Review

¶ 15     We review de novo whether a defendant's right to due process was violated.  *People v. Eason*, 2022 COA 54, ¶ 40.  We also review de novo questions of statutory interpretation.  *People v. Jaso*, 2014 COA 131, ¶ 10.

### B.     Request for Retroactive Decrease of Restitution Order

¶ 16     Jacobson appears to contend that when the court granted her a setoff in 2021 to account for her settlement with the Krasniewicz family, she was entitled to have the restitution order decreased retroactively to the date of the settlement in 2012.  We reject this contention.

¶ 17     The restitution statute provides that an order for restitution may be decreased "[i]f the defendant has otherwise compensated the victim or victims for the pecuniary losses suffered."

8

§ 18-1.3-603(3)(b)(II).  The statute does not allow a defendant to recoup restitution payments that were made after a settlement is reached but before the defendant notified the court of the settlement or sought a decrease of the restitution order.  *See People v. Montoya*, 2024 COA 37M, ¶ 37 ("We will not add words to or subtract words from a statute.").  And Jacobson does not point us to any other statute that allows her to claw back overpayments.

¶ 18 As a practical matter, upon a defendant's application for a decrease in restitution, a court can only relieve the defendant of the *balance* of the restitution order owed to a victim.  Once a state disburses restitution to a victim, the state no longer controls that money.  *See People v. Nelson*, 2015 CO 68, ¶ 40 n.4 (citing § 18-1.3-601, C.R.S. 2024), *rev'd on other grounds*, 581 U.S. 128 (2017).  The court does not have the authority to order a victim to refund what has already been paid.  *Id.* (citing § 13-65-103(2)(e)(V), C.R.S. 2024; § 24-4.1-302.5(1)(a), C.R.S. 2024).  Thus, any reimbursement for restitution that was overpaid to a victim who has otherwise been compensated necessarily must come from the state.  *See id.* at ¶ 41.

¶ 19    But the defendant bears the burden of proving an entitlement to a setoff against or a decrease in a restitution order. *People v. Gregory*, 2019 COA 184, ¶ 25. And the defendant exclusively controls when to file a motion with the court seeking such relief. Interpreting section 18-1.3-603(3)(b)(II) as Jacobson urges — to require the state to refund restitution paid to a victim between the date the victim is otherwise compensated and the date the defendant seeks a decrease in restitution — effectively shifts any consequence for the delay in seeking a decrease away from the defendant and to the state.[6] That is an absurd result we refuse to endorse. *Montoya*, ¶ 37 ("[W]e will avoid a reading of a statute that would lea[d] to an absurd or illogical result.").

¶ 20    Although Jacobson may have paid more in restitution to the Krasniewicz family than she was obligated to, that wound is self-inflicted. Had Jacobson filed a motion to decrease restitution in

---

[6] Under Jacobson's interpretation of the statute, (1) the victim double recovers during the period of delay between when the victim is otherwise compensated and when the defendant elects to notify the court that a setoff or decrease is required; (2) the state has to refund the defendant the amount the victim was overpaid, effectively becoming responsible for the overpayment without having any control over when the defendant requests a setoff or decrease; and (3) the defendant suffers no consequence from the delay.

May 2012 when she settled with the Krasniewicz family, she could have received the full benefit of the settlement via a decrease in the balance owed at that time (which, according to Jacobson, should have been the total amount of restitution ordered in favor of the Krasniewicz family). Instead, she waited more than nine years to file a motion to reduce her restitution obligation.[7]

¶ 21    Jacobson counters that the restitution statute contains no deadline to seek a decrease in restitution. *See* § 18-1.3-603(3)(b). That is true. And it makes sense because a defendant may "otherwise compensate[] [a] victim . . . for the pecuniary losses suffered" many years after a restitution order is entered. *Id.* But a defendant is nevertheless in control of when to seek a setoff against

---

[7] Jacobson initially filed a pro se motion to decrease her restitution obligation in 2014, but she failed to prove she was entitled to a decrease because the settlement agreement she attached to her motion did not pertain to any of the victims for whom restitution had been ordered. Jacobson appealed the district court's order denying her 2014 motion, but the appeal was dismissed when Jacobson failed to respond to a show cause order from this court. As best we can tell, nothing prevented Jacobson from filing a motion to decrease restitution in 2012 or another motion to decrease restitution after her 2014 motion failed on the merits. Nothing in the record justifies a nine-year delay.

or decrease in a restitution order and thus in control of how much benefit they can realize as a result.

¶ 22　　Thus, we conclude that the district court did not err by decreasing Jacobson's restitution order by the outstanding balance owed to the Krasniewicz family but declining to order the state to reimburse her for amounts she paid between May 2012 and September 2021.

### C.　The District Court's Refusal to Refund Overpaid Restitution Does Not Violate Due Process

¶ 23　　To the extent Jacobson contends that the district court's refusal to order the state to refund payments she made to the Krasniewicz family between May 2012 and September 2021 amounts to a due process violation, we disagree.

¶ 24　　As an initial matter, the parties disagree as to whether we should apply the due process analysis set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), or in *Medina v. California*, 505 U.S. 437 (1992).　Even accepting Jacobson's position that the *Mathews* framework controls, we perceive no due process violation.　"Under the *Mathews* balancing test, a court evaluates (A) the private interest affected; (B) the risk of erroneous deprivation of that

interest through the procedures used; and (C) the governmental interest at stake." *Nelson,* 581 U.S. at 135.

¶ 25 We acknowledge that Jacobson has an interest in not being deprived of money she is not obligated to pay to her victims. *See id.* But the reason she continued to pay the Krasniewicz family restitution after the 2012 settlement is because she waited nine years to invoke the procedure that exists to prevent that result. All Jacobson had to do was *timely* provide the court with proof that the Krasniewicz family had otherwise been compensated and seek a corresponding decrease in the restitution order. *See* § 18-1.3-603(3)(b)(II). The risk of Jacobson being erroneously deprived of her money under the procedure that exists is low and almost entirely within her control. And the government has a substantial interest in avoiding the fiscal and administrative burden of paying Jacobson from public funds for amounts she overpaid because she delayed notifying the court that the Krasniewicz family had otherwise been compensated. Balancing these factors, we conclude that Jacobson was provided with adequate process.

¶ 26 We are not otherwise persuaded by Jacobson's reliance on *Nelson,* in which the Supreme Court held, "When a criminal

13

conviction is invalidated by a reviewing court and no retrial will occur, . . . the State [is] obliged to refund fees, court costs, and restitution exacted from the defendant upon, and as a consequence of, the conviction." 581 U.S. at 130. The Court concluded, "[A] State may not impose anything more than minimal procedures on the refund of exactions dependent upon a conviction subsequently invalidated." *Id.* at 139.

¶ 27 Critically, Jacobson's convictions have not been "subsequently invalidated" but instead were upheld on direct appeal. Section 18-1.3-603(3)(b)(II) provides a "minimal procedure" through which Jacobson could have realized the full benefit of her settlement with the Krasniewicz family. And, unlike in *Nelson*, "equitable considerations" weigh against finding a due process violation. 581 U.S. at 139. Jacobson was validly convicted and ordered to pay restitution, knew of the settlement, and could have avoided double paying her victim by timely following a simple procedure, yet she waited nine years to do so. In contrast, the state was not involved with the settlement and had no control over when Jacobson requested a reduction in her restitution obligation. As between

Jacobson and the state, why should the state have to absorb the overpayment?

¶ 28     Thus, *Nelson* is distinguishable.  The same due process concerns that were at the heart of the Supreme Court's decision are not implicated here.  *See id.* at 136 (The state "may not presume a person, adjudged guilty of no crime, nonetheless guilty *enough* for monetary exactions.").

## D.     Double Jeopardy

¶ 29     Jacobson next contends that the district court violated the constitutional prohibition against double jeopardy because it effectively increased its restitution order by denying her a refund.  She cites *People v. Shepard*, which states that "an order increasing the amount of restitution has the effect of increasing the punishment originally imposed" and that "because restitution is a part of the criminal sentence, once a legal sentence is imposed and a defendant has begun serving it, an increase in the amount of restitution ordered also violates the constitutional prohibition against double jeopardy."  989 P.2d 183, 187 (Colo. App. 1999), *superseded by statute*, Ch. 232, sec. 1, § 16-18.5-103, 2000 Colo. Sess. Laws 1032 (relocated in 2002 (Ch. 318, sec. 2, § 18-1.3-603,

15

2002 Colo. Sess. Laws 1421)). But the district court never ordered an increase in the amount of restitution Jacobson was obligated to pay. And we have concluded that Jacobson is not entitled to a refund for the amount she overpaid the Krasniewicz family because she delayed seeking a decrease in her restitution obligation. Therefore, we perceive no double jeopardy violation.

### E. Prioritization of Restitution Payments

¶ 30 Finally, Jacobson contends that the DOC has erred in accounting for and paying out the restitution it has collected from her. When a defendant is convicted and sentenced to the custody of the DOC, "the executive director of the [DOC] . . . may fix the time and manner of payment for . . . restitution . . . pursuant to section 16-18.5-110[, C.R.S. 2024,] resulting from a criminal case." § 16-18.5-106(2), C.R.S. 2024. The DOC must credit payments received from inmates in the following order: (1) "[c]osts for crime victim compensation fund"; (2) "[s]urcharges for victims and witnesses assistance and law enforcement fund"; and (3) "[r]estitution to victims." § 16-18.5-110(1).

¶ 31 Jacobson argues that had the DOC paid the CVCB first as it was required to do, she would have paid less to the Krasniewicz

16

family and received more of a benefit when she sought a decrease in her restitution order. She also contends that the DOC continues to collect restitution from her in error because her restitution obligation has been satisfied and that she is entitled to a refund of restitution she overpaid because of the DOC's actions.

¶ 32 These contentions do not involve challenges to the restitution order, which we have determined is correct, but to the way the DOC and any other involved parties have collected, accounted for, and paid out restitution. In other words, Jacobson's claims concern "the DOC's action taken under [sections 16-18.5-106 and -110], not the sentence imposed by the trial court." *People v. Carrillo*, 70 P.3d 529, 530-31 (Colo. App. 2002). Thus, her claims lie in a separate action against the DOC, which is not a party to this case. *See id.* at 531. The relief she seeks is unavailable in this appeal of her criminal conviction. *See People v. Huerta*, 87 P.3d 266, 267 (Colo. App. 2004) (Where the "defendant's challenge is not to his sentence, but rather to an act by DOC, . . . [the] [d]efendant's claim lies in an action against DOC or the State Board of Parole, neither of which is a party here.").

## III. Disposition

¶ 33    The district court's orders are affirmed.

JUDGE DUNN and JUDGE SCHOCK concur.